2021 IL App (1st) 192262-U

FIRST DIVISION
March 22, 2021

No. 1-19-2262

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| OLUSOLA OGUNBOWALE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioners-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 19 OP 61115 |
| | ) | |
| BABATUNDE OGUNBOWALE, | ) | The Honorable |
| | ) | Tiana Blakely |
| Respondent-Appellee. | ) | Judge Presiding. |

_____

JUSTICE PIERCE delivered the judgment of the court.
Presiding Justice Walker and Justice Coghlan and concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court erred by considering an improper factor in denying petitioner relief under the Illinois Domestic Violence Act. We reverse the circuit court's dismissal of petitioner's petition and remand for a new hearing.

¶ 2    Petitioner, Olusola Ogunbowale, appeals from the circuit court's order dismissing her petition for an order of protection against respondent, Babatunde Ogunbowale, following a hearing. For the reasons that follow, we reverse and remand for a new hearing.

¶ 3                                    I. BACKGROUND

¶ 4     Petitioner filed a *pro se* petition for an order of protection against respondent, her husband, and made the following allegations. The parties were married and living in the same home with two minor children. On September 18, 2019, petitioner came home from work and found that respondent had broken into her bedroom again, "after [having] been warned by the police not to" go into her room. She reported respondent to the police. She could "not sleep because he can hit me." She did not want any further unlawful contact with respondent and did not want him "to come into my room, talk, or phone me. Just stay away from me." The circuit court entered an emergency order of protection and set the matter for a hearing.

¶ 5     Petitioner represented herself at the hearing and respondent was represented by counsel. Petitioner gave the following testimony. She and respondent had been married for 23 years. She was living in the basement of the parties' marital home for her safety "because he always hits me, threatens me," and she put a lock on the door. When asked by the trial judge whether respondent had hit her before, she responded "Of course, yes, several times." On February 27, 2019, respondent broke into her room. She called the police, who warned respondent not to go near her bedroom anymore. Immediately after the police left, respondent came into her room and took away the space heater she was using. On September 6, 2019, respondent held her wrist "very tight" and they spent a day and half fighting. On September 18, 2019, respondent broke through her bedroom door again. She knew that respondent had broken the door because when the police arrived, respondent said "nobody have [*sic*] the right to lock the door with a key."

¶ 6     On cross-examination, she testified that she had lived in the home since 2000. There was only one bedroom and she had free access to the entire house. Her teenage son was living with them. She acknowledged that her petition did not make any allegations about any prior incidents

of being battered, but she had a police report from 2006.[1] In 2014, respondent said that he was "going to bury her." She had not filed for divorce yet. She did not see respondent break her door.

¶ 7    Respondent did not testify, call any witnesses, or present any evidence. The circuit court made the following findings on the record.

> "THE COURT: *** Ma'am, I have issues with your credibility. It doesn't—a lot of what you're saying doesn't make sense to me. *** You mentioned that he said that he is going to bury you, and that was in 2014. It's now 2019. You are still married to this gentleman. I don't believe there is—I don't know what's going on, but it doesn't make sense to me that you're saying that you're so afraid but you are still –
>
> THE PETITIONER: Because it's like --
>
> THE COURT: Be quiet. Your time is up. But you're still staying in the house with this person and you're really afraid. I don't know what the motive is, but I have issues with your credibility. It doesn't make sense. You didn't indicate anything about any physical abuse. While it doesn't require—the statute doesn't require physical abuse, you didn't even mention anything about physical abuse in your petition. Then today all of a sudden you mention that he has hit you, he has threatened to bury you and things of that nature. So, again, because of questions I have with your credibility, I am going to vacate this emergency order of protection and dismiss the case."

¶ 8    The circuit court entered a written order consistent with its oral judgment. Petitioner, through counsel, filed a timely notice of appeal.

---

[1]The contents of this police report were not explained on the record, and the record on appeal does not contain any police reports.

¶ 9                                    II. ANALYSIS

¶ 10    On appeal, petitioner advances two arguments. First, she asserts that the circuit court erred by basing its denial of a remedy under the Act on petitioner's continued residence in the marital home, in violation of section 214(e)(6) of the Illinois Domestic Violence Act (Act) (750 ILCS 60/214(e)(6) (West 2018)). Second, she argues that she presented unrebutted testimony describing respondent's abuse, which was the only evidence presented at the hearing. Respondent has not filed a brief in this court, and we resolve this appeal solely on petitioner's brief and the record on appeal under the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 11    The central issue in an order of protection proceeding is whether the petitioner has been abused, which is a question of fact that must be proven by a preponderance of the evidence. *Best v. Best*, 223 Ill. 2d 342, 348. (2006). We will only reverse the circuit court's findings if they are against the manifest weight of the evidence. *Id.* at 348-49. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Id.* at 350. However, whether the circuit court misapplied the Act in reaching its judgment requires us to interpret the statutory language, which presents a question of law that we review *de novo*. *In re Marriage of Padilla & Kowalski*, 2017 IL App (1st) 170215, ¶ 23.

¶ 12    We agree with petitioner that the circuit court erred by basing its denial of a remedy under the Act on petitioner's continued residence in the marital home. Section 214(c)(1) of the Act provides that the circuit court, in determining whether to grant a remedy under the Act, must consider, at a minimum

"the nature, frequency, severity, pattern and consequences of the respondent's past abuse, neglect or exploitation of the petitioner or any family or household member, including the concealment of his or her location in order to evade service of process or notice, and the likelihood of danger of future abuse, neglect, or exploitation to petitioner or any member of petitioner's or respondent's family or household ***." 750 ILCS 60/214(c)(1)(i) (West 2018).

¶ 13    Section 214(e) of the Act provides in part that the "[d]enial of any remedy shall not be based, whole or in part, on evidence that *** (5) Petitioner left the residence or household to avoid further abuse, neglect, or exploitation by respondent; (6) Petitioner did not leave the residence or household to avoid further abuse, neglect, or exploitation by respondent ***." *Id.* § 214(e)(5)-(6) (West 2018).

¶ 14    Here, the circuit court based its dismissal—which was a denial of remedies under the Act—primarily on a finding that petitioner was not credible because she claimed that she was afraid of respondent but continued to live in the marital home. *Supra* ¶ 7. Under the plain language of section 214(e)(6) of the Act, the circuit court was prohibited from considering petitioner's continued residence in the home when denying a remedy under the Act. A petitioner's continued residence under the same roof as an alleged abuser, or a petitioner's flight from a mutual residence, says nothing about whether abuse has taken place. The focus of the Act is not on the petitioner's conduct, but on the conduct of the alleged abuser. There are myriad, complex reasons why someone who has been abused may stay in abusive household. One of the stated purposes of the Act is to

"Support the efforts of victims of domestic violence to avoid further abuse by promptly entering and diligently enforcing court orders which prohibit abuse and,

5

when necessary, reduce the abuser's access to the victim and address any related issues of child custody and economic support, so that victims are not trapped in abusive situations by fear of retaliation, loss of a child, financial dependence, or loss of accessible housing or services ***." 750 ILCS 60/102(4) (West 2018).

Here, the circuit court found petitioner not credible in part because she continued to live in the marital home—a factor that the circuit court was expressly prohibited from considering—which precluded the circuit court from meaningfully addressing whether petitioner was entitled to a remedy under the Act. In our view, based on the record before us, the circuit court's error requires reversal.

¶ 15    We also note that the circuit court's oral findings did not reflect any consideration of the evidence presented against the factors set forth in section 214(c)(i), which flowed directly from the circuit court's improper credibility finding. The circuit court made no findings as to whether any abuse occurred. Furthermore, the circuit court incorrectly stated that petitioner's petition did not make any allegations of abuse; her petition indicated that she was afraid to go to sleep because respondent might hit her. At the hearing, petitioner testified that respondent had hit her several times in the past and that on September 6, 2019, respondent held her wrist "very tight." The Act defines "physical abuse" to include "knowing or reckless use of physical force, confinement or restraint ***." 750 ILCS 60/103(14) (West 2018). Petitioner, who was representing herself during the hearing, may not have pleaded specific acts of physical abuse in her petition or presented a complete history of the physical abuse, but she did allege and present evidence of abuse. Additionally, the circuit court never reached the issue of whether, regardless of any physical abuse, respondent's acts of repeatedly breaking through petitioner's locked door amounted to harassment under the Act. See 750 ILCS 60/103(7) (West 2018) ("Harassment" means knowing conduct

which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner.").

¶ 16    In sum, the circuit court misapplied the Act in denying petitioner a remedy under the Act. The circuit court's judgment must be reversed, and we remand to the circuit court for a new hearing on petitioner's petition that complies with the Act.

¶ 17                                III. CONCLUSION

¶ 18    For the foregoing reasons, the judgment of the circuit court is reversed, and we remand for a new hearing.

¶ 19    Reversed and remanded.